IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

TIMMY VUNCANNON                                                                            PLAINTIFF

VS.                                                                             CAUSE NO. 3:08CV23

UNITED STATES OF AMERICA; MISSISSIPPI BUREAU OF
NARCOTICS; MARSHALL FISHER, In His Official Capacity as
Director of the Mississippi Bureau of Narcotics; TIPPAH COUNTY;
SHERIFF BRANDON VANCE, Individually and in His Official Capacity
as Sheriff of Tippah County, Mississippi; JEFF MEDLIN, Individually
and In His Official Capacity as Agent of the Mississippi Bureau of
Narcotics; CHRIS MCALLISTER, Individually and In His Official
Capacity as an Agent of Tippah County, Mississippi; ROY SHAPPLEY,
Individually and In His Official Capacity as Deputy of
Tippah County,  Mississippi; and JOHN DOES 1-25                  DEFENDANTS

VS.

SHELBY COUNTY HEALTH CARE
CORPORATION d/b/a REGIONAL MEDICAL
CENTER                                                                      INTERVENING PLAINTIFF

## ORDER

This cause comes before the court on the motion of defendant Tippah County for judgment on the pleadings or alternatively for summary judgment [86-1] as to the claims asserted against it by intervenor Shelby County Health Care Corporation d/b/a Regional Medical Center ("the Med"). The court, having considered the memoranda and submissions of the parties, concludes that the motion is not well taken and should be denied.

The instant intervention action involves a claim by the Med, a Memphis hospital, seeking recovery of $640,648.91 in medical expenses for which, it asserts, Tippah County and/or plaintiff Timmy Vuncannon are obligated to reimburse it. This intervention action is an adjunct to the §

1983 claims asserted by Vuncannon against various governmental defendants arising out of injuries which he suffered on January 26, 2006 while engaged in a work release program, at the direction of the Tippah County sheriff. In an order dated November 14, 2008, this court dismissed most of Vuncannon's claims against the individual and governmental defendants, although it reserved judgment as to Vuncannon's claims against the United States, pending the completion of additional discovery.

On December 16, 2008, the Med filed, with the Magistrate Judge's permission, an intervenor complaint in this lawsuit against Tippah County and Vuncannon. In its complaint, the Med asserts as follows:

> 3. That on or about January 26, 2006, Vuncannon was seriously injured and was transported to The Med's facilities in Memphis, Tennessee.
> 4. That Vuncannon was in custody as a prisoner of Defendant, Tippah County at the time of his aforementioned injury.
> 5. That on or about January 26, 2006, and periods thereafter, The Med provided health care services and supplies to Vuncannon, at the specific request and instance of Vuncannon, and/or Defendant, Tippah County, in the amount of Six Hundred and Forty Thousand Six Hundred Forty-Eight dollars and 91/100 cents ($640,648.91), which amount remains due and owing after demand for payment has been made and payment refused. (See Affidavit attached as Exhibit "A").
> 6. That all of the aforementioned medical services were rendered solely at The Med's facility in Memphis, Tennessee.
> 7. That Vuncannon was in the custody as a prisoner of Tippah County at the time of his admission to The Med's facilities in Memphis, Tennessee.
> 8. That these medical expenses were made necessary as a direct result of the accident which occurred on January 26, 2006.
> 9. That The Med has demanded payment from Tippah County for the medical services rendered to Vuncannon, which payment has been refused by Tippah County.
> 10. That Mississippi law requires counties and governmental entities to pay the hospital bills for prisoners injured while in the custody and care of said counties and governmental entities.

The Med's claims against Vuncannon are asserted under Tennessee law and appear to be

conditioned upon his obtaining recovery in the instant lawsuit. In light of the court's prior orders dismissing most of Vuncannon's claims, any such recovery appears very speculative at this point. The court will therefore concentrate upon the Med's reimbursement claims against Tippah County.

The Med seeks reimbursement from the county pursuant to Miss. Code. Ann. § 47-1-59, which provides that:

> (1) When the sheriff, marshal or any other peace officer of this state has in his lawful custody a prisoner who, through accident, injury or illness, is in need of hospitalization, such officer may take such prisoner to the nearest hospital in the county or if there be no hospital in that county, to the nearest hospital in an adjacent county and if upon arrival at such hospital any physician licensed to practice medicine in this state certifies that in his opinion such prisoner is in need of hospitalization, such prisoner shall be hospitalized in such hospital for as long as in the opinion of such physician it is necessary to so hospitalize such prisoner. If, in the opinion of the sheriff or other peace officer having custody of such prisoner at the time he is delivered to the aforesaid hospital, or in the opinion of the director of the university hospital if the prisoner be brought to that institution, it is necessary that he be placed under guard while a patient at such hospital, the sheriff of the county in which the crime he was placed in custody for committing was alleged to have taken place, shall furnish the aforesaid guard. When the aforesaid physician or other reputable physician shall certify that hospitalization no longer is needed, the prisoner shall be returned to the original place of detention.
> (2) The actual expense of guarding the prisoner in the hospital shall be paid out of the general funds of the county where the prisoner was originally confined or arrested. The expense contracted incident to the hospitalization aforesaid shall be paid by the prisoner; otherwise he may be hospitalized as a state aid patient. However, if the prisoner is ineligible for state aid or the amount available for hospitalization as a state aid patient is inadequate to pay all such hospital expense of a prisoner who is financially unable to pay his own expenses, the board of supervisors of the county where the prisoner was originally confined or arrested shall, upon presentation of the certificate of the physician certifying that said prisoner was in need of hospitalization, pay from the general funds of the county the reasonable and customary charges for such services or as much thereof as is not paid by state aid. Any such payment to a hospital shall be discretionary with the board of supervisors if its county supports the hospital involved by a special tax levy for its operation and maintenance.

3

Section 47-1-59 thus establishes that counties may be held liable for their prisoners' medical care, if certain required proof is made, in the event that neither the prisoner's funds nor "state aid" (presumably Medicaid) are available to pay for this care.

The legislature's decision to hold Mississippi counties potentially liable for their prisoners' medical care is consistent with the overwhelming weight of nationwide authority. Indeed, a South Carolina appellate court, having reviewed extensive authority in this context, observed that "all but one state have determined that the governmental entity has a duty to pay" and that the "state not finding a duty, North Carolina, determined it is the responsibility of the legislature rather than the courts to assure health care providers will be reimbursed for services rendered to city detainees." *Myrtle Beach Hosp., Inc. v. City of Myrtle Beach*, 333 S.C. 590, 594-95, 510 S.E.2d 439 (S.C. App. 1998). Clearly, the Mississippi Legislature has expressed its intent that Mississippi counties be potentially liable for their prisoners' medical care, and the concerns expressed by the North Carolina court are not applicable here. It is thus apparent that, in denying any legal obligation to pay for Vuncannon's medical care, Tippah County is sailing against rather considerable legal headwinds.

Section 47-1-59 constitutes powerful authority in favor of the Med's position, but it should be emphasized that recovery under the statute is contingent upon the requisite proof being made. In *Pearl River County Bd. of Sup'rs v. South East Collections Agency, Inc*., 459 So.2d 783 (Miss. 1984), the Mississippi Supreme Court confirmed that a hospital could file a suit against a county seeking reimbursement for a prisoner's medical expenses pursuant to § 47-1-59. The Supreme Court noted, however, that the statute does not automatically hold counties liable for their prisoners' medical expenses, but, rather, requires the trier of fact to make a number of fact-

intensive inquiries, including whether "the prisoner was a county prisoner, indigent and unable to pay, that the prisoner was in need of hospitalization for the entire length of time, and that the charges were reasonable and customary, as well as others." *Pearl River*, 459 So.2d at 785.

Neither party has submitted sufficient proof to permit this court to determine the § 47-1-59 issues at this juncture, and Tippah County has focused primarily upon an argument that the Med's claims are subject to the provision of the Mississippi Tort Claims Act, § 11-46-1, *et seq*, including its notice of claim requirement and its one-year statute of limitations. This argument lacks merit. The current version of § 47-1-59 became effective in 1971, well before the 1993 enactment of the MTCA. Indeed, at the time § 47-1-59 was enacted, its provisions stood in stark contrast to the strict scheme of sovereign immunity which prevailed in this state prior to the abolition of judicial sovereign immunity in *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982). In response to *Pruett*, the Legislature legislatively re-enacted sovereign immunity in the form of Miss. Code Ann. § 11-46-6, and this legislative version of sovereign immunity was re-enacted each year until it was declared unconstitutional in 1992. *See Presley v. Miss. State Highway Comm.*, 608 So. 2d 1288 (Miss. 1992). The MTCA was enacted shortly thereafter. The fact that the Legislature made it clear as early as 1971 that municipalities could be held liable to hospitals for their prisoners' medical care clearly demonstrates that reimbursement under § 47-1-59 is a long-standing statutory right which is separate and distinct from Mississippi's constantly evolving law as it relates to sovereign immunity.

Tippah County contends that The Med's claims are "implied contractual claims," noting that the MTCA initially re-affirms sovereign immunity for such claims prior to making recovery

5

for them subject to the remaining provisions of the MTCA. *See* Miss. Code Ann. § 11-46-3.[1] The court does not agree. The Med's claims are not implied contractual claims such as those recognized by the Mississippi Supreme Court in a variety of contexts, *see City of Jackson v. Estate of Stewart ex rel. Womack*, 908 So.2d 703 (Miss. 2005), *Churchill v. Pearl River Basin Development District*, 619 So.2d 900 (Miss.1993), but are, to reiterate, claims which are explicitly authorized by statute. While the court does not rule out the possibility that the Med might have failed to comply with one or more procedural pre-requisites for asserting a claim under § 47-1-59, Tippah County has submitted no evidence or authority suggesting that such is the case.

Tippah County's motion to dismiss is based upon the provisions of the MTCA, and this court has little difficulty in concluding that the MTCA is inapplicable here. The court agrees with the Med that its reimbursement claims should proceed pursuant to § 47-1-59, as interpreted in *Pearl River*. Indeed, *Pearl River* appears to be this court's only available guidance as to how

---

[1]Specifically, § 11-46-3 provides that
    (1) The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, have never been and shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

it should proceed in trying a lawsuit under § 47-1-59, and it is not clear from that decision whether a jury trial is available. Regardless, the decision makes it clear that reimbursement under § 47-1-59 is far from automatic, and it will be incumbent upon the Med to meet its burden of proof under the statute.

This court does have concerns regarding Tippah County's ability to reimburse the Med for $640,648.91 in medical expenses, an amount which dwarfs any judgment which this court has encountered in comparable decisions. It is unclear whether the county has insurance to pay for a claim such as the instant one, and it is likewise unclear whether this is a factor which this court may even consider under § 47-1-59. At any rate, the court will closely scrutinize the Med's claims to determine such matters as whether Vuncannon was charged a higher rate than certain other hospital patients (including those with insurance), and whether reimbursement of the full amount of Vuncannon's medical bills is necessary for Tippah County to comply with the statute. The court encourages the Med to proceed in a spirit of compromise and with a recognition of the difficult financial position in which Tippah County finds itself. As for Tippah County, it should recognize that a municipality's obligation to serve as the payer of last resort for its prisoners' medical care is almost universally recognized, in Mississippi and elsewhere. Having rejected Tippah County's argument that the MTCA applies to the Med's claims, the court would hope and expect that the county's board of supervisors would take a fresh look at the Med's claims in order to determine whether compromise is possible.

It is arguable that § 47-1-59 contemplates that a party seeking reimbursement from a county first establish an evidentiary record in a hearing before the board of supervisors prior to having a court resolve these issues. It would certainly appear preferable that these claims be

7

litigated in state court, given that an appeal to circuit court is the customary legal recourse for a party aggrieved by a ruling of the county board of supervisors. At the same time, this court is cognizant of the very limited circumstances under which it has discretion to abstain from hearing this matter, and there is nothing in the language of § 47-1-59 which prohibits a federal court from enforcing its provisions. The diversity of citizenship and amount in controversy requirements appear to be met as to the Med's claims, and, under these circumstances, this court has little discretion but to proceed, even though Mississippi state courts appear to be in a better position to litigate these issues.

The court would note that Tippah County has also filed a motion to dismiss Vuncannon's medical reimbursement claims, and Vuncannon has not responded in opposition to the motion. The court finds the county's arguments to be persuasive in this context, in particular its argument that:

> Likewise, Vuncannon has no standing to complain to the County because he was provided medical care. If Vuncannon was unable to pay for medical services that were rendered to him while he was in the jail, then the County would be required to pay the provider, not Vuncannon. A physician or nurse who rendered treatment pursuant to the statute would be entitled to seek payment from Vuncannon and possibly the County.

The county's argument appears to recognize the potential right of the Med to seek reimbursement, but the court agrees that Vuncannon has established no such right in this case. The Med has filed a motion seeking for this court to stay its consideration of the county's motion pending resolution of the Med's reimbursement claims, but the court sees no good reason why Vuncannon's meritless reimbursement claims should not be immediately dismissed.

In light of the foregoing, it is ordered that

8

(1) Tippah County's motion to dismiss the Med's reimbursement claims based on the pleadings [86-1] is denied. This dismissal is without prejudice to the county's right to file a subsequent summary judgment motion on the basis of § 47-1-59.

(2) Tippah County's motion to dismiss [63-1] Vuncannon's reimbursement claims is granted.

(3) The Med's motion to stay consideration of Tippah County's motion to dismiss Vuncannon's claim [82-1] is denied.

So ordered, this the 22nd day of June, 2009.

                                      **/s/ MICHAEL P. MILLS**
                                      **CHIEF JUDGE**
                                      **UNITED STATES DISTRICT COURT**
                                      **NORTHERN DISTRICT OF MISSISSIPPI**